United States District Court
Southern District of Texas
**ENTERED**
October 18, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| YOGI METALS GROUP INC and VINOD MOORJANI, | § § § | CIVIL ACTION NO. 4:19-cv-04283 |
| Plaintiffs, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| MERRICK GARLAND, *et al*, | § § § | |
| Defendants. | § | |

**OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT**

Plaintiff Yogi Metals Group, Inc filed an application for an EB-1 visa, with Plaintiff Vinod Moorjani as beneficiary. United States Customs and Immigration Services denied the application. Plaintiffs bring action against Merrick Garland (in his capacity as the Attorney General of the United States) and various other federal officers and agencies, challenging the application denial pursuant to the Administrative Procedure Act.

The motion for summary judgment by Defendants is granted. Dkt 19. The motion for summary judgment by Plaintiffs is denied. Dkt 20.

   1. Background

The Immigration and Nationality Act authorizes a limited number of employment-based immigrant visas to be issued on an annual basis. See Dkt 20 at 6, citing Charles Gordon, et al, 3 *Immigration Law and Procedure* § 39.03[1] (Bender rev ed 1988). Within these, an EB-1 visa is a permanent one for "certain multinational executives and managers." 8 USC § 1153(b)(1)(C). Subparagraph C

describes these persons as follows:
> An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

Ibid.

To receive an EB-1 visa, a sponsoring company must file a form I-140, Immigrant Petition for Alien Worker. See generally *Khamisani v Holder*, 2011 WL 1232906, *3–4 (SD Tex) (explaining the EB-1 application process). Regulations specify the procedure for filing a Form I-140 and what evidence is required to substantiate the various regulatory requirements. See generally 8 CFR § 204.5. Section 204.5(j) addresses the specific requirements pertaining to multinational executives and managers. Among other things, an EB-1 visa application must show that the beneficiary will be employed in an executive or managerial capacity. 8 CFR § 204.5(j)(1); see also 8 USC § 1153(b)(1)(C).

Yogi Metals is a Texas company that specializes in exporting scrap metals to be recycled, mostly to India. Dkt 1 at 2. It operates out of a scrapyard with access to the Port of Houston. Yogi Metals is related to an Indian entity called SS Impex, which is also referred to as SS Impex India or SS Impex New Delhi. SS Impex is in the business of recycling scrap metals. It also owns SS Impex USA, an American subsidiary headquartered in Florida. Dkt 18-1 at 14. Yogi Metals bought 50% of SS Impex India and SS Impex USA in 2015. See Dkt 18-1 at 140–95.

Moorjani began working for SS Impex India in 1997 as a purchaser, eventually being promoted to sales associate in 2007 and sales and import manager in 2014. Id at 17. Moorjani was then promoted to general manager in June 2017, after Yogi Metals acquired its interest in SS Impex. Id at 14–15.

Moorjani was sent to the United States on a temporary L-1A visa in June 2017. Id at 14–15. Yogi Metals then filed an application with USCIS for an EB-1 visa in March 2018. See id at 7–12. The application included a statement in support (akin to an application summary), along with just over 1,200 pages of supplemental material. Id at 13–18, 19–310, Dkts 18-2, 18-3, 18-4.

USCIS issued what's called a *notice of intent to deny* in June 2019, in which it identified several deficiencies in the Yogi Metals I-140 form. Dkt 18 at 15–37. Yogi Metals and Moorjani responded to the NOID in July 2019. Id at 38. They provided an index of supplemental documents and attached 170 additional pages of exhibits. Id at 39–209. USCIS deemed the application evidence insufficient to establish Moorjani's eligibility. Dkt 18-6 at 3.

USCIS reopened the visa petition in early January 2019 on its own motion to allow Plaintiffs a second opportunity to cure the identified deficiencies. Dkt 18-6 at 12. And it issued a second NOID later that month, in which it restated and amended the previously asserted objections. Id at 12–21. USCIS also afforded Plaintiffs an opportunity to submit more evidence. Id at 20–21. Plaintiffs responded with a memorandum and an amended first page of the Form I-140, which is the primary form applicants must complete. Id at 22–27.

USCIS again denied the application in March 2020. Id at 2–10. As pertinent here, USCIS explained that it denied the petition because it lacked any evidence sufficient to establish that:

- o *First,* Moorjani would be employed in a managerial capacity (id at 3–6);

- - o *Second,* Moorjani had been employed in a managerial capacity prior to coming to the United States (id at 6–9);
  - o *Third,* Yogi Metals was *multinational*, that is, that it is doing business in more than one country (id at 9); and
  - o *Fourth,* Yogi Metals was able to pay Moorjani the proffered wage (id at 9–10).

Plaintiffs filed the complaint at issue here in October 2019. Dkt 1. The parties filed cross-motions for summary judgment on USCIS's decision to deny the visa application, based on the four issues noted above. Dkts 19 & 20.

    2. Legal standard

This challenge to UCSIS's decision to deny the EB-1 visa application arises under the Administrative Procedure Act. The APA governs the permissible scope of actions taken by federal agencies. 5 USC § 701(b)(1). The statute entitles individuals to seek judicial review of any "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." Id at § 704. Among other directions, federal courts are required to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id at § 706(2)(A). As observed by the Fifth Circuit, "A denial by the INS of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *National Hand Tool Corp v Pasquarell*, 889 F2d 1472, 1475 (5th Cir 1989). And with respect to visa cases, the Fifth Circuit is likewise clear that "[t]he plaintiff bears the burden of proving eligibility." See *Boi Na Braza Atlanta LLC v Upchurch*, 194 F App'x 248, 249 (5th Cir 2006, *per curiam*), citing *National Hand Tool*, 889 F2d at 1475.

In general, "An action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for

4

its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club v United States Environmental Protection Agency*, 939 F3d 649, 663–64 (5th Cir 2019), quoting *Texas Oil and Gas Association v United States Environmental Protection Agency*, 161 F3d 923, 933 (5th Cir 1998).

The Fifth Circuit has explained that the arbitrary-and-capricious standard is "narrow." *10 Ring Precision Inc v Jones*, 722 F3d 711, 723 (5th Cir 2013) (quotation omitted). For this reason, a court must be mindful "not to substitute its judgment for that of the agency." Ibid (alteration omitted), quoting *Motor Vehicle Manufacturers Association of the United States Inc v State Farm Mutual Auto Insurance Co*, 463 US 29, 30 (1983). True, the agency must engage in "'reasoned decision-making' in denying an application." *National Hand Tool*, 889 F2d at 1475, quoting *United States v Garner*, 767 F2d 104, 116 (5th Cir 1985). But the ultimate inquiry remains whether the agency can "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Sierra Club*, 939 F3d at 664, quoting *Motor Vehicle Manufacturers*, 463 US at 43, in turn quoting *Burlington Truck Lines Inc v United States*, 371 US 156, 168 (1962).

Regarding cases arising under the APA, the agency's role is "to resolve factual issues to arrive at a decision" supported by the administrative record. *Shuttering Foundation of America v Springer,* 498 F Supp 2d 203, 207 (DDC 2007) (quotation omitted). Review in the district court is then limited to the administrative record. See *Northwest Motorcycle Association v United States Department of Agriculture*, 18 F3d 1468, 1472 (9th Cir 1994). And the district court's only function is to determine whether as a matter of law the evidence in the administrative record permitted the agency's decision. See *Bloch v Powell*, 227 F Supp 2d 25, 30 (DDC 2002).

Where a district court reviews an agency's final decision under the APA, summary judgment "serves as the

5

mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Shuttering Foundation of America,* 498 F Supp 2d at 207, citing *Richards v Immigration and Naturalization Service,* 554 F2d 1173, 1777 & n 28 (DC Cir 1977). But because of the district court's limited role, "the standard set forth in Rule 56(c) does not apply" to its summary judgment review. *Shuttering Foundation of America,* 498 F Supp 2d at 207. The court reviews the record only to determine whether the agency acted within its authority, whether the agency explained its decision, whether the record supports the facts on which the agency relied, and whether the agency relied on the factors intended by Congress. *Fund for Animals v Babbitt*, 903 F Supp 96, 105 (DCC 1995).

### 3. Analysis

To obtain relief in this action, Plaintiffs must show that all four of the bases stated by USCIS for denial of the application were improper. But it's clear that USCIS was justified in denying the application as to the first basis, *viz*, that Moorjani would be employed in a managerial capacity. The administrative record as to that basis must be stated in further detail, but the other three needn't be addressed.

When ultimately denying the subject application, USCIS noted that Yogi Metals explained that Moorjani's work duties would include:

> Overall responsibility for the operation of the company; Oversight over the Purchasing Manager, Sales Manager, Yard Manager, and all subordinate personnel; Report directly to the president of the corporation; Commit the corporation to legally binding contracts; Direct strategic planning for corporation based on market conditions in the U.S. and globally; Represent the company both domestically and globally in contract negotiations; Monitor tariffs and trade restrictions by the Trump Administration;

> Hire and dismiss employees as appropriate.

Dkt 18-6 at 4, quoting Dkt 18 at 41. USCIS also noted this further comment by Yogi Metals on Moorjani's responsibilities:

> As the General Manager for Yogi Metals Group, Inc, Mr. Moorjani's [beneficiary] position has, as the name implies, general supervision overall aspects, but he is not involved in the actual purchase, shipping or sales of scrap metal for recycling. These duties are performed by his subordinates, he manages the managers. I hope this confirms our job offer to Mr. Moorjani and clearly outlined his duties.

Dkt 18-6 at 4, quoting Dkt 18 at 41.

USCIS explained that the duties outlined above were "rather generic" and lacked "specifics that would establish that the beneficiary will perform high level responsibilities" as required by the statute and regulations. Dkt 18-6 at 5. It also noted that Yogi Metals "has not adequately documented its staffing and structure." Ibid. This was necessary because without a staff of sufficient size and organization, Moorjani would inevitably have been required to perform many day-to-day tasks. And a manager's duties must be primarily *managerial* in nature. In considering this issue, USCIS noted that Yogi Metals hadn't substantiated the number and character of its employees at the time of the application, such as with employee and employer tax returns. Ibid.

Yogi Metals did provide an organization chart. See Dkt 18 at 42 (organization chart). USCIS recognized the chart but found it wanting. *First,* although the chart listed the positions of yard manager, purchase manager, and sales manager, it failed to specify the duties of each and to whom they reported. See Dkt 18-6 at 5. *Second,* it couldn't be determined from the chart whether the employees Moorjani was to supervise were, as required by statute,

7

"other supervisory, professional, or managerial employees." Dkt 18-6 at 5, citing 8 USC § 101(a)(44)(A)(iv). In this respect, USCIS noted that the record "lacks evidence that the yard manager, the purchase manager, and the sales manager are professionals; nor did the petitioner provide the job description of the yard manager, the purchase manager, and the sales manager." Dkt 18-6 at 5–6. *And third,* the chart showed that Yogi Metals had eleven employees, contrary to Yogi Metals' contention in its visa application that it had nine employees. Id at 6. USCIS found this inconsistency to further muddy the picture of whether Yogi Metals "employs sufficient workers to relieve [Moorjani] from primarily performing tasks necessary to produce" its services as required. Ibid.

Plaintiffs contend that the record contains sufficient evidence of Moorjani's specific managerial responsibilities. See Dkt 20 at 20–23. *First,* they point to his job title of *General Manager*, his stated managerial job duties, his supervision of managerial employees, his placement in the organization chart directly below the CEO, and his discretion over day-to-day operations. See id at 20–21, citing Dkt 18 at 41 (job offer letter), 42 (organization chart), Dkt 18-1 at 13–18 (response to second NOID). *Second,* with respect to the employees that Moorjani is supposed to be managing, Plaintiffs say that he "clearly supervises and controls the work of other 'supervisory . . . or managerial employees.'" Dkt 20 at 20 (alteration in original), quoting Dkt 18 at 40–41. Plaintiffs stress the titles of these employees, arguing that they are supervisory or managerial employees because they are managers. See Dkt 20 at 20–21. *Third,* Plaintiffs generally disagree with USCIS's objection that the application lacks specific evidence of Moorjani's managerial duties. Dkt 20 at 21–23. They argue that the responsibilities identified above are precisely the type of specific duties that are associated with a general manager of a sales company. And they point to their response to the second NOID, where they list Moorjani's duties in greater detail, with estimates on how much time will be allocated to each duty. Dkt 18-1 at 15.

Those arguments all proceed on seeming assumption that the duty of this Court is to weigh the evidence and draw its own conclusions. It's not. Instead, the question is only whether a review of the administrative record establishes that USCIS acted in an arbitrary and capricious manner when concluding that Plaintiffs' application failed to offer sufficient evidence that Moorjani would be employed in a managerial capacity. It doesn't.

To make that showing, Plaintiffs must demonstrate that USCIS "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club*, 939 F3d at 663–64, quoting *Texas Oil and Gas Association*, 161 F3d at 933. And it must first be remembered that Plaintiffs have the burden of proving eligibility for the visa. *Boi Na Braza*, 194 F App'x at 249, citing *National Hand Tool*, 889 F2d at 1475.

USCIS's decision isn't based on the wrong factors, nor does it fail to consider any important element. Rather, it concluded that Plaintiffs failed to meet their burden of proof on the issue of managerial status. That decision needed only to articulate a "rational connection between the facts found and the choice made." *Sierra Club*, 939 F3d at 664, quoting *Motor Vehicle Manufacturers*, 463 US at 43, in turn quoting *Burlington Truck Lines*, 371 US at 168. The record here certainly shows a rational decision-making process by USCIS, especially in light of Plaintiffs' failure to address its stated evidentiary concerns. In short, Plaintiffs failed to provide specific evidence to substantiate that Moorjani's job was managerial in nature, that he would not be primarily concerned with day-to-day tasks, and that he would manage other professional employees.

The arbitrary-and-capricious standard is "narrow." *10 Ring Precision Inc*, 722 F3d at 723 (quotation omitted). Summary judgment must enter for Defendants.

### 4. Conclusion

The motion for summary judgment by Defendants is GRANTED. Dkt 19.

The motion for summary judgment by Plaintiffs Yogi Metals Group Inc and Vinod Moorjani is DENIED. Dkt 20.

Defendants must submit a proposed form of judgment by October 29, 2021.

SO ORDERED.

Signed on October 18, 2021, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge